# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kevin O'Neal,

        Plaintiff,

v.

Niscayah, Inc.,

        Defendant.

Civ. No. 10-4434 (RHK/JJG)
**MEMORANDUM OPINION AND ORDER**

Eric S. Oelrich, Rajkowski Hansmeier Ltd., St. Cloud, Minnesota, for Plaintiff.

Patrick R. Martin, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this action, Plaintiff Kevin O'Neal seeks over $65,000 in commissions that he claims he earned while working for Defendant Niscayah, Inc. ("Niscayah") prior to the termination of his employment. Niscayah now moves to dismiss the action or, alternatively, for summary judgment, arguing that O'Neal's commissions were governed by a contract which precludes him from receiving any commissions after his employment was terminated. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The following facts are undisputed. O'Neal worked as an Account Executive for Niscayah and its predecessors from 2002 until 2010. His employment was at will, and

his compensation included both a salary and commissions. The commissions component of Niscayah's compensation package is outlined in a Sales Commission Plan.[1] O'Neal signed the company's 2010 Sales Commission Plan ("the Plan") on February 15, 2010, thereby agreeing to the "commission rates and compensation amounts" it established. (Gewedik Decl. Ex. 1, at 9.)

On April 30, 2010, Niscayah terminated O'Neal's employment. The issue in this case is whether he is entitled to any commissions that Niscayah had not yet paid him at the time his employment ended. The Plan contains the following relevant provisions. First, it defines "Commissions Earned" as follows:

> Commissions are considered 'earned' when an authorized Sales Turnover has been completed. This is called a Booking. The Turnover sheet will calculate the earned commission amount.

(Id. at 3.) However, it also states:

> Account Executives must be employed by Niscayah to receive commissions on bookings and payments. If employment is terminated for any reason, the commissions paid as of the termination date shall be considered the total commissions earned and payable unless otherwise required by law.

(Id. at 5, ¶ 4.) The Plan also requires that "All Account Executives must be employed by Niscayah, Inc. to receive commissions earned under this plan." (Id. at 3, ¶ 1.)

---

[1] The Plan provides that disputes will be resolved through mandatory arbitration. (Gewedik Decl. Ex. 1, at 9.) Neither O'Neal nor Niscayah mentioned the arbitration clause in their submissions on this Motion, and when the Court inquired about it at oral argument, neither side was familiar with the provision. Niscayah has since provided the Court a copy of the arbitration agreement, and both sides have confirmed that they are waiving any right to arbitrate they may have under that agreement. (See Doc. Nos. 23, 24.)

Niscayah sent O'Neal a letter on April 2, 2010, explaining the termination of his employment. (See O'Neal Aff. Ex. A.) It provided for a "pay continuation period" through the month of May, during which time he could continue to receive his salary as well as remain eligible for commissions earned and payable for April and May. This continued compensation was "predicated upon [O'Neal] working to the best of [his] ability during this pay continuation period." (Id. at 2.)

A week later, O'Neal sent a letter to Niscayah requesting payment of $65,381.11 in commissions earned under the Plan. (Id. Ex. C.) He reached this amount by adding up all of his "Booked" commissions in the Commissions Tracking System. (Id. ¶ 8.) Niscayah's human resources manager responded to O'Neal's request on May 7, stating that O'Neal was entitled to some commissions, but the commissions payable totaled only $3,358.73 based upon the "current commission Tracking System." (Id. Ex. B.)

Three days later, the company sent O'Neal another letter, revoking the pay continuation it had previously offered because O'Neal had not signed the offer letter. This letter further stated that "in accordance with [Niscayah's] Sales Commission Plan, you have been paid in full for all earned and payable commissions." (Oelrich Aff. Ex. A.) O'Neal has received no commissions from Niscayah since his employment was terminated. He filed this action, asserting claims for breach of contract, unjust enrichment, and failure to provide wages as required by Minnesota Statutes § 181.13. He seeks to recover $65,381.11 in commissions he believes the company owes him for his "booked" transactions as of his termination date. Niscayah now moves to dismiss all of O'Neal's claims or, alternatively, for summary judgment.

3

**STANDARD OF REVIEW**

A Court may convert a motion to dismiss under Rule 12 into one for summary judgment under Rule 56 if it considers materials outside the pleadings. E.g., Sherwood Med. Indus., Inc. v. Deknatel, Inc., 512 F.2d 724, 725 n.2 (8th Cir. 1975). The parties have submitted affidavits and documents beyond the pleadings, and the Court will consider those materials and treat this Motion as one for summary judgment under Rule 56. See id. Judgment as a matter of law is appropriate where a case turns on the language of a contract, as here, because contract interpretation "is initially a matter of law for the court." Alday v. Decatur Consol. Water Servs., Inc., 658 S.E.2d 476, 478 (Ga. Ct. App. 2008); accord Ga. Code Ann. § 13-2-1.[2]

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvitt v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show that specific

---

[2] The Plan provides that it shall be governed by Georgia law, and neither party disputes that Georgia law should apply. The relevant portions of Georgia law mirror the law in Minnesota.

facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

When interpreting a contract, the Court must first decide whether it is clear and unambiguous. Britt v. Albright, 638 S.E.2d 372, 375 (Ga. Ct. App. 2006). "The existence or non-existence of an ambiguity is a question of law for the court." Woody's Steaks, LLC v. Pastoria, 584 S.E.2d 41, 43 (Ga. Ct. App. 2003) (citing Se. Atl. Cargo Operators v. First State Ins. Co., 398 S.E.2d 264 (Ga. Ct. App. 1990)). "A contract is ambiguous if it is reasonably susceptible to more than one interpretation, considering the context in which the words are used and giving them their plain and ordinary meaning." Brozo v. Oracle Corp., 324 F.3d 661, 665 (8th Cir. 2003) (citing Barry v. Barry, 78 F.3d 375, 382 (8th Cir. 1996)). In determining whether ambiguity exists, the Court considers only the contract itself and does not look to extrinsic evidence. See id.; accord Mandato & Assocs., Inc. v. Sepulveda Masonry, 693 S.E.2d 620, 623 (Ga. Ct. App. 2010).

In the Court's view, the terms of the Plan governing O'Neal's commissions are clear and unambiguous; under the Plan, his claims fail as a matter of law.[3] According to Paragraph 4 of the Plan, "If employment is terminated for any reason, *the commissions paid as of the termination date* shall be considered the <u>total commissions earned and</u>

---

[3] O'Neal attempts to introduce a material fact issue by arguing that the Plan lacked consideration. (Opp'n Mem. at 11–12.) There are numerous problems with this argument, however. First, O'Neal's Complaint avers that he "entered into a contract" with Niscayah concerning his commissions. (Compl. ¶ 16.) Indeed, the first count of his Complaint asserts a breach-of-contract claim. Secondly, the Plan provides that O'Neal's continued employment with Niscayah was conditioned on his signing and accepting its terms. Moreover, O'Neal's right to commissions in the first place is "entirely a creature of contract." Lee v. Fresenius Med. Care, Inc., 741 N.W.2d 117, 128 n.8 (Minn. 2007). He cannot have it both ways.

5

*payable*." (Gewedik Decl., Ex. 1, at 5, ¶ 4 (emphases added).) This provision contemplates a situation just like O'Neal's in which a commissions-eligible employee is terminated. In this situation, the Plan defines the employee's already-paid commissions as the total commissions "earned and payable" to him—in other words, the total commissions O'Neal was entitled to in light of his employment being terminated were the commissions he had already been paid.

O'Neal points to the Plan's definition of "Commissions Earned" in an attempt to show ambiguity. The definition in Paragraph 3 provides that "[c]ommissions are considered 'earned' when an Authorized Sales Turnover has been completed. This is called a Booking." (Id. ¶ 3.) While this initially appears inconsistent with Paragraph 4, the Court disagrees that it creates ambiguity for two reasons. First, there is nothing inconsistent or ambiguous about the Plan defining "commissions earned" in one way generally, while defining them in a different and more limited way in the specific case of a terminated employee. Second, a provision in Paragraph 1 and the definition of "Commissions Payable" in Paragraph 3 are consistent with Paragraph 4's limitation and bolster the interpretation Niscayah urges.

Paragraph 1, which lays out general information about the Plan, states that "[a]ll Account Executives must be *employed* by Niscayah, Inc. to receive commissions earned under this plan or any previous plan." (Gewedik Decl. Ex. 1, at 3, ¶ 1 (emphasis added).) The Plan thus distinguishes between the concepts of *earned* commissions and the right to *receive* those commissions. Stated differently, an employee who is terminated before commissions have been paid may not be entitled to receive commissions even if he has

"earned" them.  Additionally, in describing "Commissions Payable" in Paragraph 3, the Plan states "Commissions are payable in installment payments" and explains that commissions will be paid in proportion to the percentage a customer pays the company. (Id. ¶ 3.)  It goes on to state that "to receive 'commissions payable,' the Account Executive *must be an employee* of Niscayah *at the time* the Commission is changed from Commissions Earned to Commissions Payable."  (Id. (emphasis added).)

In short, the Plan read as a whole provides for commission payments in just the manner Niscayah describes—"an Account Executive generally gets paid when Niscayah gets paid, but if the Account Executive is no longer employed by Niscayah when Niscayah gets paid, then the Account Executive does not get paid."  (Reply Mem. at 4.) While this result may seem harsh, the terms of the Plan unambiguously cut off O'Neal's right to receive unpaid commissions upon his termination.  See, e.g., FDIC v. Hartford Accident & Indem. Co., 97 F.3d 1148, 1151 (8th Cir. 1996) ("A court must not impose its own concept of fairness under the guise of construing a contract.").  O'Neal is essentially trying to accelerate commissions on all of the remaining payments due on his accounts— payments the clients have not yet made to Niscayah—and such acceleration is not allowed under the Plan's plain terms.

If a contract is unambiguous, the Court simply enforces it according to its clear terms.  Britt, 638 S.E.2d at 375.  The entire $65,381.11 that O'Neal seeks represents commissions he believes he "earned" prior to his termination on April 30, 2010 (see Compl. ¶ 12.)  All of these commissions are therefore governed by the Plan, and under the Plan he is not entitled to them.  The representations Niscayah made to O'Neal after

7

his termination, suggesting that he could remain eligible for commissions if he continued cooperate with the company through the month of May and offering to pay $3,358.73 in commissions, do not render the Plan ambiguous. Cf. UniFund Fin. Corp. v. Donaghue, 653 S.E.2d 513, 515 (Ga. Ct. App. 2007) ("Parol evidence is not admissible to contradict or construe an unambiguous contract."). Thus, they do not alter the result.[4]

Because the Plan governs all of the commissions O'Neal seeks, his unjust enrichment claim also fails. E.g., Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1413 (11th Cir. 1998) (finding that, under Georgia law, "[r]ecovery on a theory of unjust enrichment [] is only available 'when as a matter of fact there is no legal contract.'") (quoting Regional Pacesetters, Inc. v. Halpern Enters., Inc., 300 S.E.2d 180, 185 (Ga. Ct. App. 1983)). Since O'Neal is not seeking any commissions which are not governed by the Plan, he cannot recover under an unjust enrichment theory. See Fiebelkorn v. IKON Office Solutions, Inc., 668 F. Supp. 2d 1178, 1184 (D. Minn. 2009) (Kyle, J.) (rejecting quasi-contract claims, including unjust enrichment, with respect to commissions Plaintiff sought which were governed by a Sales Plan).

Finally, the Court addresses O'Neal's third claim for violation of Minnesota Statutes § 181.13. That law provides:

> wages or commissions actually earned and unpaid at the time of [an employee's] discharge are immediately due and payable upon the demand of the employee.

---

[4] O'Neal makes no claim that Niscayah's offer of a "pay continuation period" during which he would remain eligible to receive commissions created a new agreement, under either contract or quasi-contract theories. He makes no claim for any commissions which he would have been paid between April 30, 2010, and May 28, 2010, during the "pay continuation period," and, in any event, he apparently declined the company's offer for this continuation period.

Minn. Stat. § 181.13(a). Since the statute does not define the term "earned," the Court must look to the applicable employment contract or policy to determine what, if any, "earned" wages or commissions a terminated employee may be entitled to. Lee v. Fresenius Med. Care, Inc., 741 N.W.2d 117, 125–27 (Minn. 2007). Section 181.13 does not create a substantive right to any benefits; it is "a timing statute," mandating only <u>when</u> an employer must pay a terminated employee the benefits to which he is already entitled under his employment agreement. Id. at 129.

With respect to commissions, "the terms of the [company's] own compensations plan may be considered in determining whether [an employee] had earned [] commissions" for purposes of § 181.13(a). Holman v. CPT Corp., 457 N.W.2d 740, 743 (Minn. Ct. App. 1990). Here, because the Court has determined that O'Neal is not entitled to any unpaid commissions under the terms of the Plan, there were no "commissions actually earned and unpaid" at the time of his discharge. See Sherwood v. Investors Bank Corp., No. CX-96-2370, 1997 WL 259980, at *2 (Minn. Ct. App. May 20, 1997) (where Plaintiff was not entitled to commissions on some loans pursuant to his contract, the contract determined whether those commissions were "earned" for purposes of § 181.13). Niscayah did not violate § 181.13(a) by failing to pay O'Neal the amounts he demanded because, pursuant to the Plan, the commissions he had already received at the time of his termination represented the total commissions he was owed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Niscayah's Motion to Dismiss and/or for Summary Judgment (Doc. No. 8) is **GRANTED**. O'Neal's Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 1, 2011          s/Richard H. Kyle
                                 RICHARD H. KYLE
                                 United States District Judge